UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANNETTE M. DANIELS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL A. ASTRUE,<br>Commissioner of Social Security<br><br>　　　　Defendant. | No. CV 09-01050 AGR<br><br>MEMORANDUM OPINION AND ORDER |

　　Plaintiff Annette M. Daniels ("Daniels") filed a Complaint on February 12, 2009. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on March 6 and 18, 2009. (Dkt. Nos. 5, 7.) The parties filed a Joint Stipulation ("JS") on September 17, 2009, that addressed the disputed issues. The commissioner filed the certified administrative record ("AR"). The court has taken the Joint Stipulation under submission without oral argument.

　　Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

# I.

## PROCEDURAL BACKGROUND

On November 29, 2006, Daniels filed an application for disability insurance benefits, alleging an onset date of June 27, 2005. AR 12, 103-05. The application was denied. AR 64. Daniels requested a hearing. AR 73. On May 16, 2008, an Administrative Law Judge ("ALJ") conducted a hearing at which Daniels, her husband, and a vocational expert testified. AR 23-63. On September 15, 2008, the ALJ issued a decision denying benefits. AR 9-21. Daniels requested review. AR 6. On December 19, 2008, the Appeals Council denied the request for review. AR 1-4. This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

///

///

# III.

# **EVALUATION OF DISABILITY**

### A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found Daniels meets the insured status requirements through September 30, 2010. AR 15. Daniels has the following medically determinable severe physical impairments: "arthritis, a back disorder, asthma and systemic lupus erythematosus."[1] *Id.* Daniels has the residual functional capacity for "light work with limitations. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours out of an 8 hour day and she can sit for 6 hours out of an 8 hour day, with normal breaks. She can push and pull commensurate with her lifting ability without significant limitation. She is limited in bending and stooping and can only bend and stoop occasionally. She is also precluded from excessive dust and fumes due to her asthma." AR 19. Daniels "remains capable of performing her past relevant work as a post office clerk." AR 20.

### C. Treating Physicians

Where the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors including the following: (1) length of the treatment

---

[1] The ALJ found that Daniels' depression did not constitute a severe impairment. AR 15.

relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(d)(1)-(6).

Social Security Ruling ("SSR") 96-2p[4] explains that "a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 631-32 (quoting SSR 96-2p).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Id.* at 631. To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

[4] "Social Security rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

### *Dr. White*

Daniels contends that the ALJ improperly considered the opinion of a treating physician, Dr. White.  On May 7, 2008, Dr. White wrote a short letter stating Daniels was initially seen on January 12, 2000 and "has been seen intermittently since then" for acute anxiety attacks and depression.  AR 223.  Dr. White opined that "she is unable to maintain gainful employment, and will need further psychological care." *Id.*

The ALJ gave Dr. White's letter no weight for three reasons: (1) Dr. White, a family practitioner specializing in internal medicine, was not a psychiatrist or psychologist and his diagnosis did not follow the five axis format indicated by professional standards in the DSM-IV; (2) his opinion was not supported by any clinical findings, treatment notes or psychological tests; (3) he did not appear to be a treating physician within any reasonable time since the alleged onset date.  AR 16 n.4.

An ALJ may properly consider the specialty of the physician providing the opinion.  *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(5).  Dr. White's letterhead identifies him as being in "family practice, general medicine, internal medicine specialty."  AR 223.    His diagnosis does not follow the format of the Diagnostic and Statistical Manual of Mental Disorders (4th ed., text revision).

An ALJ may also properly consider the absence of any clinical findings, treatment notes or psychological tests.  *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(3).  Dr. White did not provide any treatment notes, clinical findings or test results to support his opinion.  "'[T]he ALJ need not accept the opinion of any physician, including a treating

physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004).

An ALJ may, in addition, consider the nature and extent of the treatment relationship. *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(2)(I)-(ii). The ALJ noted that the only other mention of Dr. White was in a form entitled "Claimant's Recent Medical Treatment" on which it is indicated that Daniels saw Dr. White "monthly." AR 16 n.4, 156. However, the ALJ concluded that Daniels did not prepare that form because its handwriting is different from her "Pain Questionnaire" (AR 139-41). Daniels does not contest that finding. The ALJ noted that Daniels did not identify Dr. White as a treating physician when she filed her application in December 2006. AR 16 n.4, 124-26. At the hearing, Daniels testified she began seeing a psychiatrist two weeks before the hearing. AR 16 n.4, 37. Dr. White treated her "some time ago" and she stopped seeing him because she got better. She went to him recently for referral to Dr. Bacchus. AR 38.

The ALJ articulated specific and legitimate reasons for discounting Dr. White's opinion.

### Dr. Habib

Daniels contends that the ALJ improperly considered the opinion of Dr. Habib. On July 18, 2008, Dr. Habib prepared a "Complete Medical Report (Mental)" and "Medical Assessment of Ability to Do Work-Related Activities (Mental)." AR 255-58.

The ALJ gave Dr. Habib's questionnaire little weight for three reasons: (1) Dr. Habib assessed mental limitations even though he is not a psychiatrist or psychologist, and did not make any psychiatric diagnosis; (2) Dr. Habib's questionnaire states that he saw Daniels for only a short time and provided no treatment records; and (3) Dr. Habib provided no treatment notes, clinical findings or objective tests to support his conclusions. AR 17 n.5.

An ALJ may properly consider the specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(5). As the ALJ noted, Dr. Habib diagnosed a history of lupus and complaints of joint pain. AR 17 n.5, 255. The medical records submitted to the Appeals Council indicate Dr. Habib performed physical, not psychological, examination. AR 4, 260-72. Daniels appears to argue that Dr. Habib was not purporting to opine about mental work limitations. JS 5. However, the questionnaire clearly relates to mental limitations (*e.g.*, concentration, ability to understand and carry out complex job instructions, behave in an emotionally stable manner, etc.). AR 256-58. Daniels herself points out that Dr. Habib opined her ability to understand, remember and carry out complex job instructions was seriously limited. JS 5; AR 257.

The ALJ could properly consider the length of Dr. Habib's treatment relationship. *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(2)(I). As the ALJ noted, the questionnaire indicated Dr. Habib saw Daniels for the first time on June 13, 2008 and completed the questionnaire on July 18, 2008. AR 17 n.5, 255. Dr. Habib's clinical findings were "swelling & inflammation of wrist & small joints of hand" and limited range of motion. AR 255. Dr. Habib stated that Daniels is "unable to stand for more than 15 min. Unable to carry out work that require fine motor mov't of hand." AR 257. In addition, Daniels is unable to stand or walk for more than 15 minutes because of lupus and joint pains. *Id.*

Daniels cured the absence of treatment records by submitting them to the Appeals Council. AR 4, 260-72. If "new and material evidence is submitted," the Appeals Council "shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council will then "make a decision or remand the case to an administrative law judge." 20 C.F.R. §

1 404.979.  The Appeals Council "may affirm, modify or reverse the administrative law
2 judge hearing decision."  *Id.*  Here, the Appeals Council concluded that the new
3 information "does not provide a basis for changing the Administrative Law Judge's
4 decision."  AR 2.

5 Given that the Appeals Council considered the new evidence, this Court also
6 considers the medical records.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir.
7 2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  To warrant a remand,
8 Daniels must show that the new evidence is material to determining her disability.
9 *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  To be material, the new
10 evidence must bear "'directly and substantially on the matter in dispute.'"  *Mayes*, 276
11 F.3d at 462 (citation omitted).  In addition, Daniels must demonstrate "a 'reasonable
12 possibility' that the new evidence would have changed the outcome of the
13 administrative hearing."[5]  *Id.*  Daniels does not address the applicable legal standard.

14 The ALJ discounted Dr. Habib's opinion because it was unsupported by treatment
15 notes, clinical findings or objective tests.  AR 17 n.5; *see Orn*, 495 F.3d at 631; 20
16 C.F.R. § 404.1527(d)(3).  The treatment notes do not reveal any clinical findings or
17 objective tests for the assessment that Daniels cannot stand or walk for more than 15
18 minutes.  The notes reveal only that Daniels complained of being unable to stand or
19 walk. AR 263.  The ALJ found that Daniels was not credible.  AR 19-20.  A treating
20 physician's notes based upon the claimant's subjective complaints, when the ALJ has
21 validly discounted the claimant's credibility, would not warrant a remand.  *See Bray*, 554
22 F.3d at 1228 (treating physician's work restrictions based on claimant's subjective
23 complaints may be discounted when ALJ determines claimant is not entirely credible).
24 The treatment notes subsequent to the hearing indicate Daniels was treated for right
25 shoulder pain with Motrin.  AR 260-61; *see Mayes*, 276 F.3d at 462.

---

27 [5] This Court's review is limited to the Commissioner's final decision.  If new
evidence establishes disability as of a later date, Daniels' recourse is to file a new
28 application for benefits.

The ALJ also relied upon the March 8, 2007 opinion of the examining physician, Dr. Sedgh.  AR 19.  Dr. Sedgh diagnosed lupus.  AR 207.  He found a "limited" range of motion of the back, a "slightly antalgic" gait, and no swelling or deformity.  *Id.* The range of motion of all other joints was normal.  *Id.*  Functionally, Dr. Sedgh opined that Daniels can "lift and carry 20 pounds occasionally and 10 pounds frequently"; "stand and walk six hours in an eight-hour day with normal breaks"; "sit for six hours in an eight-hour day"; occasionally kneel, crouch and stoop.  *Id.*  Daniels should avoid exposure to dust and fumes secondary to asthma.  *Id.*  An examining physician's opinion, based upon independent clinical findings, constitutes substantial evidence in support of the ALJ's rejection of Dr. Habib's opinion.  *Orn,* 495 F.3d at 632.

**D.     Credibility and Excess Pain Testimony**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter*, 504 F.3d at 1035-36.

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  The ALJ found that Daniels has medically determinable impairments of arthritis, lupus, a back disorder and asthma.  AR 15.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ found that Daniels "is not fully credible" based on five reasons:[6] (1) an examination physician's observation of malingering and sub-optimal effort during examination; (2) conservative treatment; (3) lack of objective medical evidence to support her degree of limitation; (4) inconsistent statements regarding side effects; and (5) inconsistencies between allegations and activities of daily living. AR 19-20.

### *Malingering And Sub-Optimal Effort*

An ALJ may properly rely on failure to give maximum or consistent effort during evaluation in discounting a claimant's credibility. *See Thomas*, 278 F.3d at 959. As the ALJ noted, the examining psychologist stated that "[a]s [Daniels] did not put her best effort into the testing it is difficult to comment on her work related abilities." AR 17, 20, 241. Daniels scored a 39 on her second trial of the Test of Memory Malingering, "which falls within malingering range." AR 239. The psychologist found an elevated T-score on the Minnesota Multiphasic Personality Inventory II, indicating that "the test is invalid, her profile is invalid due to over reporting of psycho-pathology." AR 240. The psychologist diagnosed malingering on the examination. *Id.* The psychologist's clinical observations provide a clear and convincing reason to discount Daniels' credibility.

### *Conservative Treatment*

Contrary to Daniels' argument, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). An unexplained or inadequately explained failure to seek treatment is a valid consideration in determining credibility. *See Orn*, 495 F.3d at 636; *Thomas*, 278 F.3d at 958-59.

---

[6] As the Ninth Circuit has noted, one case suggested that the clear and convincing standard applies unless the ALJ makes a finding of malingering, whereas other cases have held the existence of affirmative evidence suggesting malingering suffices. *Carmickle v. Commissioner*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (citing *Robbins v. Social Security Administration*, 466 F.3d 880 (9th Cir. 2006); *Schow v. Astrue*, 272 Fed. Appx. 647 (9th Cir. 2007)).

The ALJ noted that Daniels' physicians have not prescribed strong medication for pain. AR 19. In addition, Daniels "has not sought any recent, significant medical treatment for her pain complaints." *Id.* Daniels does not dispute she has not sought more significant treatment for pain or depressive symptoms, and does not provide any reason for not seeking more aggressive treatment.

### *Inconsistency With the Objective Medical Evidence*

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ reviewed the treating records from Dr. Huh, and found them generally consistent with the opinion of the examining physician, Dr. Sedgh. AR 19. Dr. Sedgh opined that Daniels was "capable of performing a range of light work activity" and had "little radiating pain, red, hot or swollen joints or numbness or tingling despite allegations of arthritic pain." AR 19, 205-07. The ALJ also relied upon the examining psychiatrist and examining psychologist. AR 20.

### *Inconsistent Statements Regarding Side Effects*

The ALJ found that Daniels' allegations were inconsistent with the medical evidence, and specifically found that she had reported minimal adverse side effects from medication. AR 19. An ALJ may rely upon inconsistencies between a claimant's allegations and her report of side effects to physicians. *See Greger*, 464 F.3d at 973 (failure to report side effect of fatigue to doctors); *see also Tommasetti*, 533 F.3d at 1039 (ALJ may rely on "ordinary techniques of credibility evaluation").

### *Inconsistencies Between Allegations and Activities of Daily Living*

The ALJ found that Daniels' claimed incapacity was inconsistent with her ability to perform household chores including meal preparation, laundry, shopping, cleaning and driving. AR 19.

Daniels argues that the ALJ failed to make any findings as to how her ability to perform some activities of daily living translated into an ability to perform sustained work

11

activity. The ALJ appeared to rely on the inconsistencies between Daniels' allegations and her activities of daily living, which may properly be considered. *Thomas*, 278 F.3d at 958-59 (inconsistencies between claimant's testimony and conduct). Even assuming the ALJ erred in relying on activities of daily living, however, error in relying on one reason would not automatically result in remand. In *Carmickle*, the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination.*" 533 F.3d at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason, among others, does not automatically result in a remand. *See also Batson*, 359 F.3d at 1197. Based on the ALJ's reasoning, his credibility determination is valid.

### E. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

The ALJ gave the testimony of Daniels' husband little weight. AR 20. The ALJ found Daniels "not fully credible" and "also note[d] that the claimant's husband is biased in her favor and he has an interest in the outcome of this case." *Id.*

The ALJ erred in relying on the husband's bias and interest in the case. *Valentine*, 574 F.3d at 694. However, just as in *Valentine*, the error was harmless. As discussed above, the ALJ gave clear and convincing reasons for rejecting Daniels' testimony. In that context, the ALJ reviewed her husband's testimony that Daniels has been in pain for a long time, that he helps her with household chores, and that she

sleeps most of the time, has crying spells, and is fearful. AR 19, 45-52. The husband testified he believes Daniels would not be able to keep a job. AR 50. Given that the ALJ gave clear and convincing reasons for rejecting Daniels' testimony, and given that her husband's testimony was similar, "it follows that the ALJ also gave germane reasons for rejecting [his] testimony." *Valentine*, 574 F.3d at 694.

### F. ALJ's Duty To Develop The Record

It is the claimant's duty to prove she is disabled. *Mayes*, 276 F.3d at 459; *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60. This principle does not, however, allow a claimant to shift her own burden of proving disability to the ALJ. *Id.* at 459.

Daniels argues that the ALJ had a duty to develop the record by obtaining medical expert testimony regarding her lupus. JS 26. The ALJ listed systemic lupus erythematosus as a severe impairment. AR 15. The ALJ did not find that the evidence was ambiguous or inadequate to allow for proper evaluation. Although Daniels complains about the examining physician, Dr. Sedgh diagnosed lupus and, after examination, opined as to Daniels' functional limitations. AR 207. There is no showing that additional evidence is needed that is not contained in the medical records, or that there is an ambiguity or insufficiency in the evidence. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). The ALJ did not err.

## IV.

## **CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 12, 2010

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE